# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

MILOUS BROWN,

                Plaintiff,      :      Case No. 2:22-cv-2469

                                            District Judge Michael H. Watson
- vs -                                  Magistrate Judge Michael R. Merz

ANNETTE CHAMBERS-SMITH, et al.,

                Defendants.      :

## REPORT AND RECOMMENDATIONS

This case under 42 U.S.C. § 1983 is before the Court on Defendants' Motion to Dismiss (ECF No. 38). Plaintiff opposes the Motion (ECF No. 46) and Defendants have filed a Reply in Support (ECF No. 47). A motion to dismiss involuntarily is a dispositive motion within the meaning of 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), requiring a recommendation by an assigned Magistrate Judge, rather than a decision.

The Motion to Dismiss is brought under Fed.R.Civ.P. 12(b)(6), Defendants contending that the Amended Complaint (ECF No. 36) fails, in several ways, to state a claim upon which relief can be granted.

Plaintiff, who is a prisoner in the custody of the Ohio Department of Rehabilitation and Corrections, originally filed this action *pro se* (Complaint, ECF No. 7). The undersigned reviewed

the Complaint under 28 U.S.C. § 1915A[1] to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." The statute expressly incorporates the language of Fed.R.Civ.P. 12(b)(6) and the undersigned therefore applied precedent applying that Rule to evaluate whether the Complaint failed to state a claim upon which relief could be granted, particularly *Bell Atlantic Corp. v. Twombly*, 550 U.S.544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Having conducted the review, the undersigned concluded all Defendants were sued both individually and officially. Under relevant precedent interpreting the Eleventh Amendment, the Court was without jurisdiction to (1) grant injunctive relief enforcing state law or (2) award monetary damages against Defendants, all of whom are state actors, in their official capacities.

On July 20, 2022, Assistant Attorney General Marcy Ann Vonderwell entered her appearance on behalf of the State of Ohio as an interested party. She filed no objections on behalf of the State and District Judge Watson adopted the Report on August 3, 2022 (ECF No. 13). Defendant Chambers-Smith waived service on August 17, 2022 (ECF No. 16), two days after Assistant Attorney General Kelly Dianne Becker entered her appearance on behalf of Chambers-Smith (ECF No. 15).

Although Defendants were not served at the time the original 1915A Report was filed, they had an opportunity to object after it was recommitted and the Magistrate Judge filed a Supplemental Report reaching the same conclusions (ECF No. 16), filed and served November 16,

---

[1] Plaintiff refers to this review as having occurred *sua sponte*. It is correct that none of the Defendants moved for the review because the Court had not yet authorized the issuance of process and they had not been served. In adopting the Prisoner Litigation Reform Act, Congress itself directed that this review occur "before docketing [the complaint] if feasible or, in any event, as soon as practicable after docketing."

2022. Defendants filed no objections within the time allowed by Fed.R.Civ.P. 72(b) and Judge Watson adopted the Supplemental Report December 9, 2022 (ECF No. 37).

Eventually counsel agreed on a schedule for Plaintiff to file an amended complaint and for Defendant Chambers-Smith and the State to respond (ECF No. 29). As Defendants point out, the original Complaint has been completely superseded by the Amended Complaint. Thus although the original complaint did receive a review under 12(b)(6) standards, the instant Motion is properly before the Court for decision on the merits. Nonetheless, to the extent the Amended Complaint repeats allegations contained in the original Complaint, the two prior Reports as adopted establish the law of the case on application of Rule 12(b)(6) to this controversy.

The State of Ohio and Defendant Annette Chambers-Smith (collectively "Defendants") assert that the ODRC's new mail policy has been held to be constitutional, citing *Whitman v. Gray*, 2022 WL 621553 (N.D. Ohio Mar. 3, 2022)(Gwin, D.J.). Whitman, who was proceeding *pro se*, had appealed denial of his petition for writ of habeas corpus and sought a protective order to protect his First Amendment rights regarding mail as to that case. Judge Gwin held a motion for protective order was not the proper vehicle to raise a First Amendment challenge. He did recognize that a prisoner's right to receive mail was protected by the First Amendment. *Id.* at *3, citing *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003), and that that protection was heightened when legal mail was involved. *Id.* at 874.

> Prison officials may open and inspect a prisoner's legal mail only in the presence of the prisoner "in accordance with appropriately drafted and uniformly applied regulations." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). Prison officials may, however, "impose [mail-related] restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier*, 343 F.3d at 873. Further, if "screening detect[s] the presence of any prohibited devices, or instruments, any such packages may be opened for

3

> inspection outside the presence of the prisoner-addressee."*Kensu*, 87 F.3d at 174-75.

*Whitman* at *3-4.  Judge Gwin concluded

> The new ODRC policy satisfies constitutional requirements. Legal mail that includes a control number is only opened in the presence of the prisoner-addressee. If there are obvious indications that a piece of mail contains contraband, ODRC staff will withhold the item and contact the sender. The sender can then request that the mail be returned. If the sender requests that the mail not be returned, it will be treated as contraband.

*Id.* at *4.  He concluded the new "control number system was introduced to stop the flow of drugs and contraband into institutions." *Id.* at n.20.

Defendants also rely on District Judge Sargus's decision in *Allah v. Smith*, 2022 WL 16832626 (S.D. Ohio Nov. 9, 2022), denying a motion for reconsideration of a prior denial of preliminary injunctive relief relating to the legal mail[2] policy.  Judge Sargus found in summary fashion that the ODRC legal mail policy did not infringe on a prisoner's First Amendment rights without serving a legitimate penological purpose.

These decisions, while instructive, do not decide the instant Motion.  Judge Gwin appears to be addressing the ODRC mail policy as written and not as it may have been applied.  Judge Sargus was rejecting an as-written challenge at the preliminary injunction stage and insisting plaintiff's case be factually developed before injunctive relief was considered.

Furthermore, the **doctrine** of *stare decisis* does not compel one district judge to follow the decision of another.

> There is no such thing as "the law of the district." Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same

---

[2] As far as the Magistrate Judge can tell, this is the same legal mail policy now in place at ODRC.

4

> district, the prior "resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another." *State Farm Mutual Automobile Insurance Co. v. Bates,* 542 F. Supp. 807, 816 (N.D. Ga. 1982). Where a second judge believes that a different result may obtain, independent analysis is appropriate. *Id.*

*Threadgill v. Armstrong World Industries, Inc.,* 928 F.2d 1366, 1371 (3rd Cir. 1991). *See also Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (district judges should not treat decisions of other district judges as controlling unless doctrines of *res judicata* or collateral estoppel apply); *United States v. Article of Drugs Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) (single district court decision has little precedential effect and is not binding on other district judges in the same district).

Although Plaintiff seeks injunctive relief against Defendant Annette Chambers-Smith, he has sued her in her individual capacity only (Amended Complaint, ECF No. 36, ¶ 1, PageID 310). Defendant Louise Denise Henry is also sued individually. *Id.* at ¶ 12. Defendants John Doe 1-5 are alternatively described as "mailroom clerks/screeners who screen the ingoing and outgoing mail of inmates housed at BeCI by applying the policies and procedures of the Director" ¶ 13 or

> "the Individuals who are in the chain of administrative command that are charged with receiving, reviewing, acting upon, and ultimately affirming, reversing, or modifying the decisions of others in the chain of administrative command and recommending and/or enforcing retaliatory discipline on Plaintiff while an inmate housed at BeCI as Plaintiff sought to protect his constitutional rights."

¶ 14. They are also sued in their individual capacity only. *Id.* Plaintiff avers that he does not know the identity of John Does 1-5, but will have to learn it through discovery. *Id.*

While Plaintiff may not know the identity – the names – of the John Does, his allegations against them are far too conclusory. All he has alleged in the Amended Complaint is that one or

5

more of them on one or more occasions acted under color of state law to deny him his constitutional right of access to the courts by enforcing or purporting to enforce the Director's Legal Mail Policy. Is it all the John Does on one occasion or different John Does on different occasions? Was the unlawful act a deprivation of access to mail or a retaliation for attempting access to mail?

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has been re-stated by the Supreme Court as follows:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Bell Atlantic Corp. v. Twombly, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting Daves v. Hawaiian Dredging Co., 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also Dura [Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627; Asahi Glass Co. v. Pentech Pharmaceuticals, Inc ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Doe v. Miami University*, 882 F.3d 579 (6th Cir. 2018), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in turn quoting *Twombly*, 550 U.S. at 570.  To compare to a simple negligence suit, it would not satisfactorily plead a claim for a plaintiff to allege "at some point in time defendant drove his car into my car negligently."  To state a claim for relief, a plaintiff would have to give a date and some description of the defendant.  This is even truer in the instant situation where it appears one or more of the John Does are accused to acting unconstitutionally on one or more occasions by doing X to interfere with Plaintiff's access to the mail.

The reasons requiring this degree of specificity is the state actors sued in their individual capacities may be entitled to qualified immunity from liability if their acts did not violate clearly established applicable precedent.  For example, the right to be free from excessively forceful handcuffing is clearly established for qualified immunity purposes.  *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), *citing Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001); *Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005), *citing Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997).  However, the plaintiff must allege some physical harm from the handcuffing.  *Lyons, citing Neague v. Cynkar,* 258 F.3d 504, 508 (6th Cir. 2001).  The plaintiff must also have complained. *Lyons, citing Burchett.*

Conversely, Plaintiff has chosen to name all Defendants in their individual capacities only, although the relief he seeks is largely declaratory or injunctive relief.  In the original Report and Recommendations screening the Complaint, the Magistrate Judge recommended dismissing claims for monetary damages against Defendants in their official capacities because such suits are

barred by the Eleventh Amendment. Suits for declaratory and injunctive relief against state actors in their official capacities, however, are not barred by the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123 (1908); *Cory v. White*, 457 U.S. 85 (1982); *Thomson v. Harmony*, 65 F.3d 1314, 1320 (6th Cir. 1995).

While the Amended Complaint in its present form fails to properly plead § 1983 claims against Defendants, the Magistrate Judge is aware of at least one colorable access to the court claim which has arisen during this case. On July 13, 2022, the undersigned filed a Report and Recommendations embodying the results of the 1915A screening (ECF No. 9). No objections were filed and Judge Watson adopted the Report August 3, 2022 (ECF No. 13). Then on August 23, 2022, Plaintiff, still proceeding *pro se*, moved for reconsideration, claiming he had never been provided with a copy of the R&R (ECF No. 19). The Magistrate Judge ordered Defendant to respond, including

> In addition to whatever else Defendant may wish to file in opposition, Defendant shall include a full description of its procedures for delivering mail from this or any other court to Plaintiff and attach as exhibits any documentation prescribing this procedure. With the memorandum in opposition, Defendant is ORDERED to file an affidavit or declaration under penalty of perjury by the ODRC employee who delivered the Report to Plaintiff describing the time, place, and circumstances of that delivery. If ODRC is unable to provide such an affidavit or declaration, it shall file a certificate of its trial attorney to that effect and of the efforts made to determine that information.

(Order Requiring Response, ECF No. 20, PageID 227).

On September 8, 2022, Defendant responded that the R&R did not come within the ODRC definition of legal mail (ECF No. 22, PageID 231). Because it was not "legal mail, "[i]n this case, ODRC followed the Ohio Administrative Code, ODRC policy, and the Belmont Correctional

8

Inmate Handbook in processing the Plaintiff's mail." This assertion of fact was not supported by any evidence. Nor did Defendant's Response comply with the Magistrate Judge's Order to provide facts about delivery of the R&R to Plaintiff. Instead, the Declaration of Defendant Lieutenant Henry confirms that mail from the Court is not "legal mail" and therefore does not require a control number.

Because the ODRC is under a duty to deliver to inmates mail from this Court, presumably there is someone on the ODRC payroll who was assigned that task on the date the R&R arrived at Belmont Correctional. Did that person perform his duty or not? What efforts have been made by Defendants' trial attorney to ascertain whether that duty was performed? This Court and others must rely on correctional institutions to perform these duties because we do not have the personnel for in-hand service of court orders and our understanding is that the Postal Service delegates to prison staff the "last mile" of delivery on mail from the courts. Plaintiff's case is already bolstered by the presumption of delivery of the R&R to the prison, because it was never returned to the Court. Plaintiff is apparently prepared to swear he never received the document. If a jury believes that assertion, it may also find the failure to deliver was negligent or reckless or intentional.

There may be other instances like this one with the R&R. There may be more than one prison staff person who did not do his or her duty with respect to Plaintiff's mail. Plaintiff should be given an opportunity to file a newly-amended complaint which sets forth the claim about the original screening R&R and any other like incidents.

To that end, the Court should indulge the preference for reaching the merits of colorable claims. Therefore the instant Motion should be found to be moot and Plaintiff be granted leave to submit a proposed second amended complaint that complies with the pleading law set forth in this

Report and general requirements of the Federal Rules of Civil Procedure on pleading with necessary specificity.

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

February 11, 2023.

s/ *Michael R. Merz*  
United States Magistrate Judge